# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIAM BOYKIN,**

            **Plaintiff,**

**-vs-**                                                    **Case No.  6:09-cv-1044-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

            **Defendant.**

_____

# MEMORANDUM OF DECISION

William Boykin (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed because the Administrative Law Judge (the "ALJ"): 1) lacked good cause to give "very little weight" to the opinions of Claimant's treating physician, Dr. Aileen Norgell and the ALJ substituted his own medical opinions for those of Claimant's treating physician (Doc. No. 27 at 14-17); 2) erred by failing to ask the Vocational Expert (the "VE") whether there was any conflict between his testimony and the Dictionary of Occupational Titles (the "DOT") (Doc. No. 27 at 9-13); and 3) failed to provide "substantial reasons" for finding Claimant's subjective testimony not credible (Doc. No. 27 at 19-20).  Claimant requests reversal for an award of benefits or, in the alternative, for remand for further consideration.  Doc. No. 27 at 20.  For the reasons set forth below, it is **ORDERED** that the final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of Section 405(g) because the ALJ

lacked good cause to give "very little weight" to the opinions of Dr. Norgell and the ALJ impermissibly substituted his own medical opinions for those of the medical experts.

## I.    BACKGROUND.

Claimant was born on July 10, 1960, and was approximately forty-seven (47) years old at the time of the hearings before the ALJ.  R. 100, 413, 422.  On January 5, 2006, Claimant filed an application for benefits alleging an onset of disability as of July 7, 2005.  R. 100-113. Claimant has an eleventh-grade education and past relevant work experience as a master mechanic.  R. 430, 435.  In the 1970's, Claimant fractured his C6 and C7 vertebrae.  R. 326.  On February 24, 2004, Claimant injured his lumbar spine in a motor vehicle accident, when the brakes failed on a van he was test driving.  R. 182, 213.  Claimant alleges disability due to degenerative disc disease in his cervical and lumbar spine.  R. 117.  Claimant's application was denied initially and upon reconsideration.  R. 56-61.  Thereafter, Claimant requested a hearing before an ALJ.  R. 55.

On June 20, 2008, a hearing was held before ALJ Douglas W. Abruzzo.  R. 422-72. Claimant and VE Walter Todorowski were the only persons to testify.  R. 422-72.  On December 9, 2008, the ALJ issued a decision finding the Claimant not disabled.  R. 15-26.   On April 20, 2009, the Appeals Council denied Claimant's request for review of the ALJ's decision.  R. 7-10. In their decision, the Appeals Council states: "Your representative contended that the [ALJ] exceeded his purview in making commentary in the decision about pain behaviors and malingering in his assessment of your subjective allegations.  Although this has merit on the face, a remand or corrective decision to eliminate the extraneous commentary would not change the outcome of the decision."  R. 8.   On June 18, 2009, Claimant appealed the Commissioner's

final decision in this Court.  Doc. No. 1.

## II.     MEDICAL AND OPINION EVIDENCE.

The dispositive issue in this case is the way the ALJ handled the opinion evidence from

Claimant's treating physician, Dr. Norgell.  The Court focuses its summary of the medical record

below on Dr. Norgell's records and opinions.

1.   Dr. Norgell's Treatment Records.

Dr. Norgell, a pain management specialist, treated Claimant "every 21 days" from

December 1, 2005 through October 30, 2007.  R. 231-49, 303, 308.[1]  On December 1, 2005,

Claimant presented to Dr. Norgell complaining of low back, "knotting" pain which was worse

with bending.  R. 247.  Claimant described the low back pain as being like a "Charlie-Horse".  R.

247.  Claimant also complained of neck pain, which he described as a stabbing pain radiating

into his left arm.  R. 247.  Claimant stated that his left arm would also feel numb.  R. 247.  Dr.

Norgell reviewed Claimant's current medications, which included Zoloft, Hydrocodone,

Methadone, Flexeril, and Soma.  R. 247.

Upon physical examination, Claimant displayed midline tenderness at the C6-C7 and L2-

L3, but no spasms were indicated.  R. 248.  Claimant retained normal range of motion.  R. 248.

Straight leg testing was positive on left leg with pain radiating into the left buttock.  R. 248.

Range of motion in the cervical and lumbar spine was intact, but Claimant complained of pain

with left lateral flexion of the lumbar spine.  R. 248.  Claimant was capable of heel walking, but

limped with toe walking.  R. 248.  Claimant had difficulty reaching with his arms over his head.

R. 248.  Crepitus was indicated in the left knee, but Claimant showed no motor weakness.  R.

248.  Dr. Norgell assessed Claimant with paresthesia of the lumbar spine, and chronic neck and

---

[1] The record does not contain treatment notes for many of these visits.  *See* R. 231-249.

low back pain.  R. 249.  Dr. Norgell prescribed a knee wedge, Hydrocodone, Flexeril, a cervical

collar, cervical pillow, lumbar cushion.  R. 249.

On December 22, 2005, Dr. Norgell's notes state that Claimant is doing well on present

medications.  R. 246.  Dr. Norgell assessed Claimant with chronic neck and low back pain,

paresthesia of the C5, L2, L3, L4 and L5, old trauma at the C5-6 and C6-7, and old compression

fracture of the C7.  R. 246.  Dr. Norgell also assessed Claimant with chronic narcotic usage.  R.

246.  Dr. Norgell continued Claimant on Flexeril and Hydrocodone.  R. 246.   On January 12,

2006, Claimant presented complaining of continued back spasms when bending and stooping.  R.

244.   Dr. Norgell diagnosed Claimant with cervical radiculitis, peripheral neuropathy, and

degenerative disc disease. R. 242.   Dr. Norgell discontinued Flexeril and added Soma to

Claimant's regimen. R. 244.

On March 9, 2006, Claimant states that he was experiencing severe pain and that lifting,

weeding, and normal daily house work exacerbated the pain.  R. 241.  Dr. Norgell's notes state

that Claimant is doing well on current medications, and has a job working for an automobile

transmission diagnostic and repair company.  R. 240.  Dr. Norgell added Methadone and

Naprosyn to Claimant's medications.  R. 240.  Dr. Norgell continued the diagnosis of cervical

radiculitis, peripheral neuropathy, and degenerative disc disease.  R. 239.  On March 30, 2006,

Claimant presented complaining of pain in the low and mid-back, feet, and knees.  R. 238.

Claimant states he is "locked up" from mid-back to low back.  R. 237.  Claimant describes the

pain as stabbing and radiating.  R. 238.  Claimant states that his medications, sitting in a hot tub,

and ice help relieve his pain.  R. 238.  Claimant contends that pain is a 10 on a scale of 1 to 10,

with 10 being the most severe pain.  R. 238.  Dr. Norgell increased Claimant's Methadone from

10 milligrams to 40 milligrams, but discontinued the Hydrocodone.  R. 237.

On April 20, 2006, Dr. Norgell's notes state that Claimant is doing well on his current medications and is working longer.  R. 235.  On May 11, 2006, Claimant reports that he continues to experience stabbing and radiating of a severe nature when "work[ing], sitting for long time or standing, [and] holding [his] arms up."  R. 234.  Claimant states that stretching, resting, and medications help relieve his pain.  R. 234.  Claimant also reports experiencing trouble sleeping and requests a prescription for Valium.  R. 233.  Dr. Norgell adds Valium to Claimant's medication regimen.  R. 233.  On June 1, 2006, Claimant presents complaining of mid-back pain radiating into his left arm, which feels like a screwdriver in his back.  R. 232.  Claimant also states he has been unable to sleep for days.  R. 232.  Claimant reports that the pain is a 10 on scale of 1 to 10.  R. 231.  Dr. Norgell adds Lortab to Claimant's medications, which include Methadone, Soma, Naprosyn, and Valium.  R. 232.  The record contains no other treatment records from Dr. Norgell.

2.  Dr. Norgell's April 29, 2006 – RFC Questionnaire.

On April 29, 2006, Dr. Norgell completed a Physical Residual Functional Capacity ("RFC") Questionnaire.  R. 317-21.  Dr. Norgell states that Claimant carries a diagnosis of old trauma to C5-6 and C6-7 from a compression fracture, a bulge at C5-6, and chronic neck pain.  R. 317.  Claimant's prognosis is "stable on pain medications."  R. 317.  Norgell describes the pain as numbness, stabbing, severe low back, mid-back, and neck pain with shooting pain into Claimant's knees and feet.  R. 317.  Dr. Norgell states the pain is constant, but worse with lifting or working with Claimant's hands above his head.  R. 317.  Dr. Norgell states the clinical or objective findings demonstrating Claimant's pain are: tenderness in midline of the C6 and L2,

dizziness, left arm numbness, low lateral flexion, limping with toe walking, limited range of motion, difficulty raising arms above head, crepitus in knees, sensory deficits in C5, and L2-6, positive straight leg raising with pain radiating into left buttock.  R. 317.  Dr. Norgell states that she has treated Claimant with Methadone, Soma, and Naprosyn.  R. 317.

Dr. Norgell reports that Claimant is not a malingerer and, although Claimant is also taking Zoloft for depression, emotional factors do not contribute to his functional limitations.  R. 318.  Dr. Norgell states that Claimant's experience of pain will frequently interfere with his attention and concentration needed to perform even simple work tasks in a typical workday.  R. 318.  Dr. Norgell states that Claimant is capable of handling moderate work stress because Claimant reports that moderate work stress is tolerable.  R. 318.

Claimant can walk 1 city block without rest or severe pain, and Claimant can sit and stand at one time for up to 1 hour.  R. 318.  Claimant can sit for less than 2 hours and stand or walk for about two hours total in an 8-hour workday.  R. 319.  Claimant must stand and walk every 15 to 20 minutes for about 5 minutes.  R. 319.  Claimant requires a job which permits him to shift positions at will from sitting, standing, or walking.  R. 319.  Claimant also requires a 15 minute break once an hour.  R. 319.  In a sedentary position, Claimant would need to elevate his legs 50% of the time.  R. 319.

Dr. Norgell opines that Claimant can occasionally lift 10 pounds or less, rarely lift 20 pounds, and can never lift 50 pounds.  R. 319.  Claimant can frequently hold his head in a static position or look down with sustained flexion.  R. 320.  Claimant can occasionally turn his head to the right or left, but Claimant can never look up with sustained flexion.  R. 320.  Claimant can occasionally twist, stoop, crouch, climb ladders, and climb stairs.   R. 320.   Claimant has

significant limitations with reaching, handling or fingering.  Claimant can grasp, turn and twist objects with his hands about 50% of the time, but can only perform fine manipulations 20% of the time, and reach overhead 10% of the time during an 8-hour workday.  R. 320.  Dr. Norgell also opines that Claimant's impairments will produce good days and bad days, and Claimant will be expected to miss more than four days per month due to his impairments.  R. 320.

   3.  Dr. Norgell's October 30, 2007 – Cervical Spine RFC.

On October 30, 2007, Dr. Norgell completed a Cervical Spine RFC.  R. 303-07.  Dr. Norgell states that she has treated Claimant every twenty-one days since December 1, 2005.  R. 303.  Dr. Norgell diagnoses Claimant with cervical hypolordosis, osteoarthritis myelopathy of the C6 and L5, and degenerative disc disease.   R. 303.  Dr. Norgell describes Claimant's pain as constant, bone popping, neck and low back pain.  R. 303.  Dr. Norgell identifies the following signs, findings and associated symptoms of Claimant's impairments: tenderness, muscle spasm, muscle weakness, chronic fatigue, sensory changes, reflex changes, swelling, motor loss, drops things, reduced grip strength, depression, and cataracts.  R. 303.  Dr. Norgell reports that Claimant has significant limitation in motion the cervical spine, including: 40% extension; 30 %f left rotations; 21% lateral bending; 40% flexion; 60% right rotation; and 26% right lateral bending.  R. 303.

Dr. Norgell opines that Claimant's pain will constantly interfere with the attention and concentration needed to perform even simple work tasks because Claimant takes his medication every 4 hours.  R. 304.  Dr. Norgell states that Claimant's medications cause dizziness, drowsiness, upset stomach, constipation, and lack of concentration.  R. 304.  Dr. Norgell opines that Claimant's impairments can be expected to last "forever."  R. 304.

Dr. Norgell opines that Claimant can walk 1 city block without needing rest or experiencing severe pain.  R. 304.  Claimant can sit for thirty (30) minutes before needing to get up, and can stand for thirty (30) minutes before needing to sit down.  R. 305.  Claimant can sit and stand or walk for a total of less than 2 hours in an 8-hour workday.  R. 305.  Claimant requires a job that permits shifting at will from sitting, standing or walking.  R. 305.  Claimant will require unscheduled breaks every 1 to 2 hours.  R. 305.  With prolonged sitting, Claimant will need to elevate his legs 50% of the time.  R. 305.  Claimant can occasionally lift 10 pounds, can rarely twist or stoop, and can never crouch, climb ladders, or climb stairs.  R. 306.  Claimant has significant limitations with reaching, handling, and/or fingering.  R. 306.  Claimant is limited to grasping, fingering, and reaching overhead for 10% of the time during an 8-hour workday.  R. 306.

4.   Dr. Norgell's October 30, 2007 – Peripheral Neuropathy RFC.

On October 30, 2007, Dr. Norgell completed a Peripheral Neuropathy RFC.  R. 308-12. Dr. Norgell repeats that she has treated Claimant every twenty-one days since December 1, 2005. R. 308-10, 316.  Dr. Norgell diagnoses Claimant with peripheral neuropathy, hypolordosis, osteoarthritis, and cervical disc disorder with myelopathy.  R. 308.  Dr. Norgell opines that due to the nature of Claimant's spine degeneration, from top to bottom, there are no operative procedures available.  R. 308. Dr. Norgell states that Claimant's symptoms include: pain; deficiencies in joint proprioception; urinary incontinence; weakness; sensory loss; decreased deep tendon reflexes; chronic fatigue; fecal incontinence; cramping and burning in the feet; arthritis in the left knee; bursitis in the right knee; degenerative disc disease; cataracts both eyes; broken neck – C6-7; diverticulitis; depression; and severe acid reflux.  R. 308.  Dr. Norgell

-8-

characterized Claimant's pain as severe.  R. 308.  Dr. Norgell states that Claimant's pain is located in the neck, low back, knees, feet, and in muscle spasms.  R. 308.  Dr. Norgell opines that Claimant's impairments are permanent.  R. 308.  Dr. Norgell identifies the following associated psychological problems associated with Claimant's physical limitations: cognitive limitations; impaired attention and concentration; impaired short-term memory; reduced ability to attend to tasks; reduced ability to persist in tasks; personality change; and depression.  R. 309. Dr. Norgell opines that Claimant cannot stand or sit for more than thirty minutes due to drowsiness caused by the side-effects of Claimant's medications.  R. 309.

Dr. Norgell opines that Claimant can walk 1 city block without rest or severe pain, and Claimant can sit, stand or walk for 30 minutes at time before needing to rest.  R. 309.  Claimant can sit, stand, or walk for at total of less than 2 hours in an 8-hour workday.  R. 309.  Claimant will require unscheduled breaks during a normal workday due to pain, muscle weakness, and chronic fatigue, but they will vary depending on humidity.  R. 309-10.  Claimant will need to elevate his feet with prolonged sitting due to low back pain for 50% of the time during an 8-hour workday. R. 310.  Claimant can rarely lift and carry less than 10 pounds, and can rarely twist, but can never stoop or crouch.  R. 310.  Claimant has significant limitations with reaching, handling, and fingering.  R. 310.  Claimant is limited to grasping, fingering, and reaching for only 10% of the time during an 8-hour workday.  R. 310.   Claimant's pain will constantly interfere with the attention and concentration needed to perform even simple work tasks.  R. 316.  Dr. Norgell states that she cannot opine as to the degree Claimant can tolerate work stress because Claimant's daily dose of medication would "drop the normal person to the ground."  R. 316. Claimant's impairments will  cause good days and bad days, and Claimant will be absent more

than four days per month due to his limitations.  R. 316.

     5.  Dr. Norgell's October 30, 2007 – Lumbar Spine RFC.

     Dr. Norgell again states that she has been treating Claimant on a monthly basis since December 1, 2005, and Claimant carries the diagnoses of paresthesia of C5-6 and C6-7, chronic neck pain, cervical degenerative disc disease from an old compression fracture of the C7.  R. 313.  Dr. Norgell opines that Claimant's prognosis is stable.  R. 313.  Dr. Norgell states that a March 24, 2005 MRI shows facet fusion of the C6-7, degenerative disc disease, annular tear of the C5-6 and C4-5, and bilateral foraminal stenosis.  R. 313.  Dr. Norgel opines that Claimant is not a malingerer and Claimant's symptoms include pain in the low and mid-back, neck, and shoulder.  R. 313.  Dr. Norgell characterizes the pain as a screw driver like stabbing pain which radiates into Claimant's left arm causing numbness.  R. 313.  Dr. Norgell states that she has treated Claimant with Oxycodone, Lortab, Zoloft, and Valium with no side-effects.  R. 314. Dr. Norgell opines that Claimant's depression and personality disorder contribute to this physical condition.  R. 315.  Dr. Norgell opines that Claimant is incapable of even low stress jobs because Claimant takes too many opiates.  R. 315. Claimant can occasionally lift 10 pounds and can occasionally hold his head in a static position.  R. 311.  Claimant can rarely turn his head to the right or left, but can never look down or look up with sustained flexion.  R. 311.  Claimant can occasionally twist, stoop, crouch, climb ladders, and climb stairs.  R. 312.  Claimant has significant limitations with reaching, handling, and fingering.  R. 312.  Claimant can grasp with the right hand 50% of time, but only 30% with the left hand during an 8-hour workday.  R. 312.  Claimant can finger or reach overhead 30% of the time with both hands in an 8-hour workday.  R. 312.  Finally, Dr. Norgell opines that Claimant's impairments will cause him to miss work

more than four days per month.

    6.   Other Opinions.

The record also contains numerous other opinions from treating, examining, and non-examining physicians, chiropractors, and psychologists.  Those opinions are listed below:

- Dr. Robert Fogarty, a chiropractor, who treated Claimant from October 16, 2004 through May 2, 2006 (R. 185-226), completed a physical RFC on May 2, 2006, wherein he opined that: Claimant is not a malingerer; his pain will constantly interfere with his attention and concentration; he can sit, stand, or walk for up to one hour at a time, but Claimant can sit, stand, or walk for a total of at least 6 hours in an 8-hour workday; Claimant will need to take unscheduled breaks every 1 to 2 hours; Claimant's legs should be elevated 100% of the time during prolonged sitting; Claimant can frequently lift and carry 10 pounds and he can occasionally lift and carry 20 pounds; Claimant can rarely twist, stoop, crouch, climb ladders, or climb stairs; Claimant has significant limitation in repetitive reaching, handling, and fingering; and Claimant's impairments will likely cause him to miss work more than four days per month.  R. 227-230.

- Dr. Eugene A. Melvin, Jr., a pain specialist and treating physician, diagnosed Claimant with peripheral polyneuropathy of upper and lower extremities on March 31, 2004.  R. 174.

- Dr. Martha Pollock, an internist, conducted a consultative physical examination on June 16, 2006.  R. 326-31. Physical examination revealed: unimpaired walking; no clubbing; no peripheral edema; no difficulty getting on and off the examination table;

-11-

mild difficulty heel and toe walking; mild difficulty squatting; moderate difficulty hopping; diminished range of motion in neck, but normal range of motion in the lumbar spine; diminished grip bilaterally, but preserved digital dexterity; negative Romberg testing; intact motor and sensory function; positive straight leg raising, but no radiation into the legs; and no paravertebral muscle spasms.  R. 326-30.  However, Dr. Pollock did not offer a function-by-function opinion as to Claimant's limitations.  R. 326-33.

- Dr. Pollock conducted a second consultative physical examination of Claimant on March 8, 2008.  R. 322-25.  Physical examination revealed: a somewhat small stepped gait with a stooped forward posture; bilateral cataracts; no clubbing; intact peripheral pulses; no peripheral edema; full use of the hands; no difficulty getting on and off the examination table; moderate difficulty with heel and toe walking; moderate difficulty squatting; severe difficulty hopping; reduced range of motion in the neck, lower back, and left shoulder; negative Romberg testing; intact motor and sensory functions; symmetrical reflexes; positive straight leg testing eliciting pain across the back; severe difficulty with orthopedic maneuvers; preserved digital dexterity; and history of depression.  R. 323-24.  Once again, Dr. Pollock did not offer a function-by-function opinion as to Claimant's limitations.  R. 322-25.

- Dr. Belinda Yeager, a non-examining state agency consultant, completed a physical RFC on June 26, 2006, base upon a medical records review.  R. 32-39.  Dr. Yeager diagnosed Claimant with a history of fractured cervical spine and degenerative disc disease of the lower back.  R. 32.  Dr. Yeager opined that Claimant: can occasionally

lift and carry 20 pounds and can frequently lift and carry 10 pounds; can sit stand and/or walk about 6 hours in an 8-hour workday; is unlimited in pushing or pulling; can frequently climb ramps or stairs and balance; can occasionally stoop, kneel, crouch, and crawl; can never climb ladders, ropes or scaffolds; has no manipulative, visual, communicative, or environmental limitations; and has credible symptoms.  R. 33-39.

- Dr. Ronald Kline, a non-examining state agency consultant, completed a physical RFC on December 6, 2006, based upon a records review.  R. 295-302.[2]  Dr. Kline opined that Claimant has a diagnosis of chronic neck and back pain.  R. 295.  Dr. Kline opined that Claimant: can occasionally lift and carry 20 pounds and can frequently lift 10 pounds; can sit, stand, and/or walk about 6 hours in an 8-hour workday; and is unlimited in pushing or pulling; has no postural, visual, communicative, or environmental limitations; and is limited in handling.  R. 296-300.

- Dr. David Guttman, a non-examining state agency consultant, completed an RFC on March 18, 2008, based upon a records review.  R. 332-339.[3]  Dr. Guttman opined that Claimant had degenerative disc disease and that Claimant: can occasionally lift and carry 20 pounds and 10 pounds frequently; can sit, stand, or walk about 6 hours in an 8-hour workday; is unlimited in pushing or pulling; can occasionally climb, balance, stoop, kneel, crouch, or crawl; is limited in reaching, but is otherwise unlimited in handling, fingering, or feeling; has no visual, communicative, or

---

[2]  Dr. Kline did not review any treating source opinion as part of his records review.  R. 301.

[3]  Dr. Guttman did not review Dr. Norgell's opinions.  R. 338 (stating that he did not review a treating source opinion as to Claimant's physical capabilities).

environmental limitation; and Claimant's symptoms are credible and consistent with the medical record.  R. 332-39.

- Dr. Christopher Jean, a psychologist, conducted a consultative mental evaluation of Claimant on May 31, 2006.   R. 343-45.   Claimant's mental status examination revealed: alert and orientated; good basic functioning; no gross gait abnormalities noted; no motor shakes or tremors; abstract thought processes; attention and concentration within normal limits; depressed mood with full range of affect; insight judgment, and impulse control were fair; and average intellectual functioning.  R. 344.   Dr. Jean diagnosed Claimant with Major Depressive Disorder, recurrent, moderate, and anxiety disorder.  R. 344.  Dr. Jean opined that Claimant's functional ability "is moderately impaired based on [Claimant's] episodes of depression and anxiety."  R. 344.

- Dr. Jean conducted a second consultative mental evaluation on May 11, 2006.  R. 340-42.  Mental status examination was the same except Claimant displayed marginal attention and concentration, he became distracted, and he could not spell "world" backwards.   R. 341.   Dr. Jean opined that Claimant: would require assistance to manage benefits if awarded; is significantly impaired in terms of functional ability based upon his episodes of depression and anxiety. R. 341.  Dr. Jean diagnosed Claimant with Major Depressive Disorder – severe, and generalized anxiety disorder. R. 341-42.   Dr. Jean also opined that Claimant had a Global Assessment of Functioning Score of 51.  R. 342.

- Dr. Leigh Rosenberg, a non-examining psychologist, completed a Psychiatric Review

-14-

Technique ("PRT") based upon a records review on June 14, 2006.  R. 250-63.  Dr. Rosenberg opined that Claimant's depression and anxiety disorder were not severe impairments.  R. 250, 262.

- Dr. Jane Cormier, a non-examining psychologist, completed a PRT on October 28, 2006, opining that Claimant's depression and anxiety were not severe impairments. R. 281-94.

## III.   ALJ'S DECISION.

On December 9, 2008, the ALJ issued a decision finding Claimant not disabled.  R. 15-26.  The ALJ found that Claimant has the following severe impairments: neck pain secondary to cervical fracture in 1978; lower back pain secondary to motor vehicle accident in 2004; and osteoarthritis in the knees.  R. 17.[4]  The ALJ determined that Claimant retains the following RFC:

> [T]he [C]laimant has the [RFC] to perform light work except must avoid balancing – more particularly, any one-legged maneuver; must avoid crawling, and must avoid the use of ladders, ropes, or scaffolds.  For sedentary occupations, duties must be compatible with a sit, stand, walk option (defined as no more than 5 steps from the work station, performing a stretch maneuver, returning within one minute, doing this no more than 5 times each hour).  The [C]laimant is limited to no more than occasional pushing and pulling with the upper bilateral extremities, including the operation of hand levers, unless the lever requires less than 5 pounds – in which case, there are no limitations.  The [C]laimant must avoid overhead reaching, feeling, pushing and pulling with the bilateral upper extremities.  The [C]laimant must avoid prolonged exposure to cold temperature extremes along with extreme wetness and humidity (i.e., the [C]laimant must avoid exposure to environments which are both cold and wet).  The [C]laimant must avoid exposure to unprotected heights, and is limited to simple and routine tasks and simple, work-related decisions due to the effects of opiate medications.

---

[4] The ALJ determined that Claimant's mental impairments are not severe.  R. 17-19.

R. 19.  Thus, the ALJ determined that Claimant retains the RFC for a reduced range of light and

sedentary work.  R. 19.

Regarding Dr. Norgell's treatment records, the ALJ states the following:

> The [C]laimant began seeing a pain management specialist in December 2005.  Throughout June 2006, he was using Methadone, Soma, Naprosyn, Zoloft, and Valium.  According to office visit notes from June 1, 2006, the [C]laimant reported pain at a level 10 out of 10 even though he had taken Methadone.  He complained of stabbing mid-back pain radiating into his left arm.  Despite his report of severe pain, his blood pressure that day was 106/78.  The [ALJ] seriously questions the [C]laimant's subjective description of his pain level on that day for several reasons.  Methadone is a very high level opiate and it is difficult to believe this medication afforded the [C]laimant no relief whatsoever from a pain level which (at level 10) is supposed to be the "worst pain imaginable."  If the [C]laimant actually had been experiencing level 10 pain on that day, it is reasonable to expect there would have been other signs of his distress.  When a person is in serious pain, the "arousal complex" is activated, the body produces adrenalin/endorphins, and the blood pressure and heart rate increase.  It is difficult to believe that a 46 year-old male could be in the "worst imaginable pain" and have lower than normal blood pressure.

R. 21-22 (emphasis added).  Regarding Dr. Norgell's opinions, the ALJ states the following:

> The undersigned has also taken into consideration the medical source statements of [Dr. Norgell].  Dr. Norgell is the [C]laimant's pain management specialist.  In April 2006, she indicated that the [C]laimant had an old trauma and compression fractures at C6-C7, with disc bulge at C5-C6 and chronic neck pain.  Dr. Norgell concluded that the [C]laimant stand and walk about two hours, sit for less than 2 hours, lift and carry up to 10 pounds occasionally and 20 pounds rarely.  She opined that the [C]laimant could use his hands for grasping 50% of the time, and his fingers for fine manipulation 20% of the time, but that he could only use his upper extremities for overhead reaching 10% of the time.  In October 2007, Dr. Norgell completed additional questionnaires specifically regarding the [C]laimant's lumbar and cervical spine functioning, as well as a questionnaire for individuals with peripheral neuropathy.  In these documents, Dr. Norgell opined that the

[C]laimant could sit, stand and walk for less than 2 hours, respectively, in an 8 hour workday; lift up to 10 pounds occasionally, and would need to shift positions at will from sitting, standing, or walking.   Dr. Norgell further opined that the [C]laimant's legs would need to be elevated due to low back pain when sitting.   Her limitations as to the [C]laimant's use of his hands and fingers are contradictory: in the cervical spine questionnaire, Dr. Norgell opines that the [C]laimant would be limited to using both hands for grasping and fingering for only 10% of an 8 hour workday.   Use of both upper extremities would also be limited to 10% of the time in an 8 hour workday.   In the peripheral neuropathy questionnaire, Dr. Norgell wrote that the [C]laimant would be able to use his right hand for grasping 50% of the time and his left hand for grasping 30% of the time in an 8 hour workday; both hands 30% of the time for fingering, and both upper extremities 30% of the time in an 8 hour workday for reaching. She also opined that the [C]laimant was incapable of low stress work because he takes too many opiods.

The undersigned is persuaded that the [C]laimant's spine impairment is associated with some limitations and requires occasional shifting of positions; furthermore, it is reasonable to believe his testimony that his symptoms are made worse by cold, damp conditions.   The record reveals that he takes quite a bit of narcotic medication which likely interferes with his ability to process more complex instructions on a sustained basis. However, Dr. Norgell's 4 opinions are given very little weight.   First, they are inconsistent with each other.   Second, they are inconsistent with other medical evidence which raises questions as to whether or not the [C]laimant has peripheral neuropathy and if so, to what extent his functioning is actually affected.   Third, Dr. Norgell's conclusions appear to be predominately, if not entirely, based on the [C]laimant's self-reported subjective symptoms, which are not fully credible in light of objective medical evidence which fails to show underlying impairments that could reasonably be expected to cause the severe pain the [C]laimant alleges.   The pain management specialist appears to be especially attentive to the subjective complaints of the [C]laimant and might have been swayed by the [C]laimant's pain behaviors.

R. 23.[5]   Thus, the ALJ gave very little weight to Dr. Norgell's opinions because they are:

---

[5] Earlier in the decision, the ALJ found that "some of the [C]laimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. . . ."  R. 21.

"inconsistent with each other," specifically in terms of Claimant's ability to grasp, finger, and reach; "inconsistent with other medical evidence," which was unspecified, but in the ALJ's view raised doubts as to whether Claimant actually suffers from peripheral neuropathy; and because Dr. Norgell may have been swayed by Claimant's subjective complaints and "pain behaviors." R. 23.

Thereafter, ALJ describes, in detail, what he means by "pain behaviors":

> In psycho-medical literature, "pain behaviors" refers to a form of communications; things people do or say to communicate their suffering to other people. Pain behaviors can manifest in many ways and may include constant or intermittent moaning, groaning, rubbing the affected body part, grimacing, limping, or constantly changing positions. Often these behaviors stem from a need to persuade others the pain and suffering is real. Thus, pain behaviors can manifest whether the pain is "genuine" (organically cause) or "subjective" (organically caused by exaggerated or emotionally caused but expressed as organic) or "factitious" (intentionally falsified). People who are in genuine pain or subjective pain may fall into a pattern of continually calling attention to their suffering by pain behaviors, generally to no real advantage and often to their own detriment. Other persons may respond in an overly solicitous manner, which reinforces the "disability" of the person in pain by encouraging more pain behaviors and less physical activity (without any real change in physical condition). Conversely, other persons may respond with frustration, resentment or hostility which also encourages more pain behaviors and less physical activity as it reinforces the need to persuade other (without any real change in physical condition). Thus, pain behaviors are widely regarded as "maladaptive" in these populations, in that they serve no real purpose and can be very detrimental. On the other hand, persons with factitious pain generally have a primary goal related to relationships (e.g., attention, sympathy, nurturing) or circumstance (e.g. leniency or release from duties or punishment) or finances (e.g. disability benefits) that person finds otherwise unattainable. People whose factitious pain relates to relationships may have a true mental/emotional disorder expressed in their pain behaviors (e.g., Munchausen Syndrome), whereas people who factitious pain relates to circumstances or finances have a reality-based and goal-

orientated motivation for their pain behaviors (e.g., malingering).
R. 24.  The record contains no evidence or medical opinions regarding pain behaviors.

As for the other medical opinions, the ALJ: rejects Dr. Fogarty's RFC because his is not an acceptable medical source, he failed to explain the basis of his opinions, and the limitations set forth therein "are largely inconsistent with other, credible medical evidence" (R. 22-23); does not mention Dr. Melvin's diagnosis of peripheral neuropathy; does not state the weight given to Dr. Pollock's consultative reports; gives "limited weight" to opinions of the non-examining state agency consultants who provided physical RFC's (R. 24); assigns "very little weight" Dr. Jean's opinions because they are based primarily on the Claimant's self-reported symptoms and are inconsistent with Dr. Jean's mental status examinations (R. 17-18); does not mention Dr. Rosenberg's PRT; and gives "significant weight" to Dr. Cormier's opinion that Claimant's mental impairments are not severe (R. 19).  Thus, the ALJ rejects or gives limited weight to the opinions of Claimant's treating physician, Dr. Norgell, chiropractor, Dr. Fogarty, the consultative mental examiner, Dr. Jean, and the non-examining state agency consultants who provided physical RFC assessments.   In the decision, the ALJ gives significant weight to only one opinion, Dr. Cormier's non-examining PRT based upon a records review.

## IV.   ISSUES.

As set forth above, Claimant raises three issues on appeal, whether: 1) the ALJ demonstrated good cause to give "very little weight" to Dr. Norgell's opinions and whether the ALJ impermissibly substituted his own medical opinion for that of Claimant's treating physician (Doc. No. 27 at 14-17); 2) the ALJ erred by failing to ask the VE whether there was any conflict between his testimony and the DOT (Doc. No. 27 at 9-13) and 3) the ALJ provided "substantial

reasons" for finding Claimant's subjective statements not credible (Doc. No. 27 at 19-20). Claimant requests a remand for an award of benefits or, alternatively, a remand for further consideration.  Doc. No. 27 at 20.

The Commissioner generally maintains that the final decision is supported by substantial evidence.  Doc. No. 31 at 3-14.  The Commissioner asserts that the ALJ demonstrated good cause to reject Dr. Norgell's opinions because they are internally inconsistent and are inconsistent with other medical evidence (Doc. No. 31 at 7-10), and the ALJ did not impermissibly substitute his own medical opinion for that of Claimant's treating physician (Doc. No. 31 at 10-11). The Commissioner maintains that although the ALJ did not specifically inquire of the VE whether his testimony conflicted with the DOT, no error occurred because Claimant has failed to show or contend that such a conflict exists.  Doc. No. 31 at 5-7.  Finally, the Commissioner maintains that substantial evidence supports the ALJ's credibility determination. Doc. No. 31 at 11-13.  Thus, the Commissioner requests that the final decision be affirmed. Doc. No. 31 at 14.

## V.  **LEGAL STANDARDS.**

### A.   **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At

step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.    THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

*accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C.   REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990));  *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

 This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it

is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).   A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[6]

## VI.   ANALYSIS.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that

---

[6] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[7] "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a

---

[7] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

treating physician." *Johnson,* 138 Fed.Appx. at 269.   Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians).   The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

In this case, the ALJ rejects Dr. Norgell's four opinions for three reasons: 1) they are inconsistent with each other, specifically in terms of Claimant's ability to grasp, finger, and reach; 2) they are inconsistent with other unspecified medical evidence; and 3) because Dr. Norgell may have been swayed by Claimant's subjective complaints and "pain behaviors."   R. 23.   As to the first reason, Dr. Norgell's opinions regarding Claimant's ability to grasp, finger, and reach are different between her Peripheral Neuropathy RFC (R. 310) and her Lumbar Spine RFC (R. 312).   *See* supra pp. 8-10.   Both opinions, however, show that Claimant has significant limitations in the ability to grasp, finger, and reach, but differ only as to the degree.   *See* supra pp. 8-10.   The ALJ noted no other inconsistencies between Dr. Norgell's four opinions. Moreover, the ALJ fails to explain how this single inconsistency warrants rejecting all of Dr. Norgell's opinions.   Accordingly, while the ALJ accurately pointed out a single inconsistency

between two of Dr. Norgell's four opinions, the Court finds that it is not good cause, standing alone, to give very little weight to all of Dr. Norgell's opinions.

As to the second reason, the ALJ fails to state what other medical evidence contradicts Dr. Norgell's opinions or what other medical evidence "raises questions as to whether or not the [C]laimant has peripheral neuropathy. . . ." R. 23. In *Morrison v. Barnhart*, 278 F.Supp.2d 1331, 1336 (M.D. Fla. 2003), another division of this Court stated the following:

> . . . the ALJ's explanation that Dr. Yonker's opinion "is not consistent with the evidence of record as a whole, including the doctor's own examination findings," (T. 19) is too general to permit meaningful judicial review in this case. Upon consideration, the court finds the ALJ erred by failing to properly evaluate Dr. Yonker's opinion, and a remand is warranted. On remand, the ALJ is directed to reevaluate Dr. Yonker's opinion and identify specifically what evidence of record "as a whole" was inconsistent and which of Dr. Yonker's own examination findings were inconsistent with his opinion.

*Id*. As in *Morrison*, the ALJ's statement that Dr. Norgell's opinions are "inconsistent with other medical evidence" is too general to allow for meaningful judicial review.

The Commissioner maintains that the ALJ demonstrated good cause to reject Dr. Norgell's opinions because they are inconsistent with the other record medical evidence. Doc. No. 31 at 8-10. The Commissioner describes, in detail, specific record evidence which conflicts with Dr. Norgell's opinions. *Id*. However, the ALJ failed to make the findings the Commissioner urges support the ALJ's decision. R. 23. The Eleventh Circuit has recently held that "a court may not accept appellate counsel's *post hoc* rationalization for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same basis articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23,

2010) (citing *FPC v. Texaco, Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)).[8] Accordingly, the Court finds that the second reason provided by the ALJ to give very little weight to Dr. Norgell's opinions is not supported by substantial evidence.[9]

The ALJ's final reason for rejecting Dr. Norgell's opinions is that Dr. Norgell "appears to be especially attentive to the subjective complaints of the [C]laimant and might have been swayed by the [C]laimant's 'pain behaviors.'" R. 23. The ALJ then explains what is meant by "pain behaviors," discusses their physical and psychological manifestations, and the possible motivations behind an individual who displays "pain behaviors." R. 24. This record is devoid of *any* evidence concerning "pain behaviors." Moreover, no medical professional, whether treating, consultative, or non-examining, opined or suggested that Claimant was malingering. In *Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986), the Eleventh Circuit held that an ALJ may not reject the opinions of a treating physician by reaching his own medical conclusion after reviewing the medical records. *Id.* "An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (J. Johnson, concurring). In his concurring opinion in *Marbury*, Judge Johnson stated: "Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously [their] medical diagnoses . . . cannot stand." *Id.* at 841. Based on this record, the ALJ's reasons for giving very little weight to the opinions of

---

[8] Unpublished decisions of the Eleventh Circuit are not binding, but are persuasive authority.
[9] Additionally, as set forth above, another treating physician also diagnosed Claimant with peripheral neuropathy, but the ALJ did not discuss that diagnosis in his decision. *See* R. 174.

Claimant's treating physician are not supported by substantial evidence.[10]   Accordingly, the case

must be reversed and remanded for further proceedings.

**VII.    REMEDIES.**

While Claimant requests a reversal for an award of benefits, based on this record, it is

recommended that the cumulative effect of the evidence does not establish disability without any

doubt and Claimant has not demonstrated that Claimant has suffered an injustice.  *See Davis*, 985

F.2d at 534 (award of benefits appropriate where evidence establishes disability beyond a doubt);

*Walden*, 672 F.2d at 840 (award of benefits appropriate where Claimant has suffered an

injustice). The Court has also considered whether the ALJ's error is harmless, but concludes that

in order to reach that conclusion the Court would be left in a situation where it would have to

impermissibly reweigh the evidence and draw its own conclusions as to the appropriate weight to

accord the medical opinions. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (a

reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment

for that of the Commissioner.").

**VIII.    CONCLUSION.**

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED** pursuant to sentence four of

Section 405(g) because: the ALJ failed to demonstrate good cause to give very little

weight to Dr. Norgell's opinions;

---

[10] In his decision, the ALJ also questions Dr. Norgell's June 1, 2006, treatment notes, which reflect that Claimant complained of experiencing severe pain.  R. 21.  The ALJ strongly suggests that if Claimant was really suffering such severe pain at that time, his blood pressure would have been higher due to the "arousal complex."  R. 21-22. Again, the record does not contain any evidence concerning the medical correlation between pain and blood pressure.  Such statements by the ALJ are not supported by substantial evidence.  *See Hillsman*, 804 F.2d at 1182; *Marbury*, 957 F.2d at 841 (J. Johnson, concurring).

2.  The case is **REMANDED** for further proceedings; and

3.  The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on July 6, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Office of Shea Fugate
P.O. Box 940989
Maitland, FL 32794


John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Douglas W. Abuzzo
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Drive
Orlando, FL 32817-9801